IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CRYSTAL KURTTS, :
:
    Plaintiff, :
: CIVIL ACTION 09-712-M
v. :
:
CHIROPRACTIC STRATEGIES GROUP, :
INC., *et al.*, :
:
    Defendants. :

MEMORANDUM OPINION AND ORDER

This action comes before the Court for consideration of Plaintiff Crystal Kurtts's Motion for Summary Judgment (Docs. 41-43) and Defendant Chiropractic Strategies Group, Inc.'s (hereinafter *CSG*) Motion for Summary Judgment (Docs. 45-46, 52). Jurisdiction is invoked in this Court under 28 U.S.C. § 1331, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), and other statutory law. The parties filed written consent and this action was referred to the undersigned Magistrate Judge to conduct all proceedings and order judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 18). After consideration, Plaintiff's motion is **DENIED** in its entirety and Defendant's Motion is **GRANTED** in its entirety.

The relevant facts, briefly, are as follows. Kurtts was

1

employed in July 2007 as a receptionist[1] by Defendant Mobile Spine & Rehab on the Loop, Inc. (hereinafter *MSRL*) (Complaint, ¶ 11; Doc. 9, ¶ 11); her direct supervisor was Dr. Johnnie Morgan (Complaint, ¶ 13; *see also* Doc. 7, ¶ 13 and Doc. 9, ¶ 13).[2] In October 2007, Morgan began sending "numerous lewd and sexually offensive text messages at all hours of the day and night in which he requested sexual favors" (Complaint, ¶ 16);[3] on October 3, Morgan sent Kurtts approximately sixty-four text messages during a two and one-half hour period in which he "repeatedly demanded sexual gratification" (Complaint, ¶ 17). Kurtts states that Morgan would stand behind her, at her desk, and rub her shoulders; he would also try to hug her when they passed in the hallway (Complaint, ¶¶ 18, 20). On November 6, 2007, Morgan told Kurtts that she could get a better work schedule for "small favors" (Complaint, ¶ 24). On November 8, Morgan told Kurtts that her playing hard to get turned him on (Complaint, ¶ 26); later that same day, when closing up the office, Morgan turned

---

[1]Though Plaintiff asserts in her complaint that she was hired as a chiropractic assistant, and MSRL agrees with this statement (*see* Complaint, ¶ 11; Doc. 9, ¶ 11), Kurtts and CSG agree that she was hired as a receptionist (*see, e.g.*, Doc. 42, ¶ 25; Doc. 55, p. 3).
[2]Though Morgan was originally named as a Defendant to this action, he was dismissed after repeated attempts to serve him failed (Docs. 26, 28).
[3]Defendants CSG and MSRL have both moved to strike these allegations as scandalous under Fed.R.Civ.P. 12(f) (Doc. 7, ¶ 16; Doc.

2

off the office lights and snuck up on Plaintiff (Complaint, ¶ 28). The next day, Kurtts called and spoke to Deborah Gonzales, CSG's Clinic Administrator, and complained of Morgan's behavior; Plaintiff provided Gonzales with copies of the text messages and told her that she no longer felt comfortable working around Morgan (Complaint, ¶¶ 31-32). Kurtts did not return to work (Complaint, ¶ 35).

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (hereinafter *EEOC*) (Complaint, ¶ 10). The EEOC issued a letter of determination on May 11, 2009, stating that "[t]he evidence of record supports [Kurtts's] allegations that Dr. [Johnny] Morgan subjected her to a sexually hostile work environment" (Complaint, ¶ 10). On August 4, 2009, the EEOC issued Plaintiff a Right to Sue letter (*id.*).

On October 30, 2009, Kurtts filed this action against CSG and others, raising claims of sexual harassment, discrimination, and retaliation (count I); negligent and/or wanton hiring, supervision, training, and retention (count II); assault and battery (count III); invasion of privacy (count IV); and outrage (count V) (Complaint, ¶¶ 40-65). Plaintiff and Defendant both filed Motions for Summary Judgment on January 7, 2011 (Docs. 41-

---

9, ¶ 16). These "motions" are **DENIED** as are all other similar motions

43, 45-46, 52). Each party has responded to the Motions (Docs. 53-55) and replied to the responses (Docs. 56-57).

The Rules of Civil Procedure, in discussing summary judgment, state that

> an adverse part [to a motion for summary judgment] may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e); *see also Celotex Corporation v. Catrett*, 477 U.S. 317, 325-27 (1986). The Court further notes, in a motion for summary judgment, that "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted). Summary judgment may be granted against a party who fails to establish the existence of an element essential to that party's case and on

---

found with the Defendants' answers.

which that party will bear the burden of proof. *Id.* The Court notes that it "must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992), *cert. denied*, 507 U.S. 911 (1993) (internal citations and quotations omitted). Furthermore, "[s]ummary judgment is justified only for those cases devoid of any need for factual determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

In a Title VII case, a Plaintiff must prove discriminatory motive. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977); *Perryman v. Johnson Co., Inc.* 698 F.2d 1138, 1141 (11th Cir. 1983). Since motive or intent is seldom capable of proof by direct evidence, the Supreme Court has established a legal framework which allows a court to infer discriminatory motive on the basis of circumstantial evidence. *Perryman*, 698 F.2d at 1141. The Court will use the evidentiary framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981), to analyze

5

the record in considering CSG's Motion.  *See United States Postal Service v. Aikens*, 460 U.S. 711 (1983); *Barber v. International Brotherhood of Boilermakers, Lodge No. 57*, 778 F.2d 750, 754 (11th Cir. 1985).  Under *McDonnell Douglas*, the Court first considers whether the Plaintiff has established, by the preponderance of the evidence, a *prima facie* case of discrimination.  Second, assuming a valid *prima facie* case, the Court then considers whether the Defendant has rebutted the Plaintiff's case by articulating a legitimate nondiscriminatory reason for its decision.  And third, the Court considers whether the Plaintiff has carried the ultimate burden of proving, by a preponderance of the evidence, that the Defendant's rebuttal is, in fact a pretext for true discriminatory intent.  *Barber*, 778 F.2d at 754-755; *Harris v. Birmingham Board of Education*, 712 F.2d 1377, 1382 (11th Cir. 1983).  The Court notes that "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Springer v. Convergys Customer Management Group Inc.*, 509 F.3d 1322, 1347 (11th Cir. 2007).  This means that "[i]f the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated

reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim." *Chapman v. AI Transport*, 229 F.3d 1012, 1024-25 (11th Cir. 2000).[4]

The Court has before it two Motions seeking summary judgment as to all claims raised. The Court will take up the motions, addressing each claim as it appears in the Complaint.

Plaintiff claims that CSG "willfully and maliciously subjected [her] to unlawful sexual harassment" which affected the terms of her employment (Complaint, ¶ 41). To establish a hostile environment sexual harassment claim under Title VII, Kurtts must show (1) that she belongs to a protected group; (2) that she has been subjected to unwelcome sexual harassment; (3) that the harassment was based on her sex; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (*en banc*), *cert. denied*, 529 U.S. 1068 (2000).

Plaintiff has testified, by deposition, that after work on November 8, 2007 (the day, at closing, when the lights were turned off and Dr. Morgan was standing next to her when the

---

[4]The Court notes that *Chapman* was a case brought pursuant to the

lights came back on), she called Tamisha Perry to get the contact phone number so that she could complain about Morgan's harassment (Doc. 45, Kurtts Depo., pp. 126-28).[5] The next morning, Kurtts called and spoke to Deborah Gonzales, telling her that she had received inappropriate text messages from Dr. Morgan; at Gonzalez's request, Kurtts forwarded the text messages to her (*id.* at pp. 69-70, 128). After Kurtts had texted the messages, Gonzalez called her back and asked her "what [she] wanted to do, did [she] want to be paid [her] last check or what;" Plaintiff said yes (*id.* at p. 71). Kurtts said that Gonzalez was unsure what she was going to do about Dr. Morgan but that they would look into it; that was the last conversation Kurtts had with anyone at CSG (*id.*). Plaintiff did not go into work that day, November 9, and never returned; she had called and told Dr. Morgan that she would be late that day (*id.* at pp. 55, 129-30). Plaintiff stated that she did not make up her mind to leave CSG until after she "reported the incident and nothing seemed to be done about it" (*id.* at p. 96). Kurtts further testified that if she had been told by CSG that it was going to either get rid of Morgan or move him somewhere else and

---

Age Discrimination in Employment Act.
   [5]This is Exhibit A.

invited her to come back to work, she would have returned (Doc. 43, Kurtts Depo., p. 114).[6]

Deborah Gonzales Oviedo testified that she was Clinic Administrator with CSG and had been since 2005; her job duties were to manage the staff at the clinics, including the one in Mobile where Kurtts worked (Doc. 43, Gonzalez Depo., pp. 11-13).[7] Gonzalez stated that there is supposed to be a Manual in each clinic for the employees to have access to, but that she did not know where it was kept in the clinics (*id.* at pp. 36-37). The witness did not know if the clinic doctors or any other employees are given training on the policies and procedures in the Manual (*id.* at pp. 37-38). Gonzalez further stated that if any employee had a sexual harassment problem, that employee would contact her; she admitted, though, that the Manual did not name a particular person or phone number to call (*id.* at pp. 47-48). Gonzalez admitted that she had never received any training on sexual harassment or retaliation (*id.* at p. 50).

Gonzalez further testified that she had taken a phone call from Kurtts who said that she felt like she was being sexually harassed by Dr. Morgan and that she felt uncomfortable being

---

[6]This is Exhibit D.

around him; Gonzalez told her that she would bring it to
Jennifer Geissner's attention (*id.* at pp. 65-68). She had
Plaintiff forward the text messages from Dr. Morgan to her (*id.*
at p. 72-74). Gonzalez stated that she relayed her conversation
with Kurtts to Geissner and gave her a copy of the text messages
(*id.* at p. 68, 72-74). The witness said that she did not think
that she offered Plaintiff administrative leave while they
conducted the investigation (*id.* at p. 67).

Jennifer Geissner testified that she was the controller at
CSG and had had that job from sometime in the late 90's though
late summer 2008 (Doc. 45, Geissner Depo., p. 18).[8] Geissner
said that Gonzalez told her of Kurtts's complaint of sexual
harassment which she related to Dr. Plambeck who said he would
handle it (*id.* at pp. 50-52).

After reviewing the arguments and the submitted evidence,
the Court would find, if there was nothing else to be
considered, that Plaintiff has demonstrated a *prima facie* case
of hostile environment because of Dr. Morgan's sexual
harassment.[9] However, there is more to consider.

---

[7]This is Exhibit E. The Court further notes that it will refer to the witness as Gonzalez, for the sake of consistency, though her married name is Ovieda (*see* Doc. 55, p. 3 n.4).

[8]This is Exhibit E.

[9]The Court is aware that CSG admitted, for purposes of these Motions, that Plaintiff could demonstrate as much (Doc. 46, p. 18)

In making its summary judgment argument, CSG has focused on the fourth and fifth elements[10] of the *Mendoza* analysis (Doc. 45, pp. 16-20). Specifically, Defendant asserts that Kurtts cannot show that the terms and conditions of her employment were changed or that there is any basis for holding CSG liable. More specifically, Defendant argues that Plaintiff resigned and was not constructively discharged and further argues that it is shielded from liability because Plaintiff did not give CSG the opportunity to correct the problem.

The Court notes that for Kurtts to prove that she was constructively discharged, she must show that the "'working conditions were so intolerable that **a reasonable person** in [her] position would be compelled to resign.'" *Kilgore v. Thompson & Brock Mgmt.*, 93 F.3d 752, 754 (11th Cir. 1996) (emphasis added) (*quoting Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1317 (11th Cir. 1989)). Furthermore, the employee must give the employer "sufficient time to remedy the situation." *Kilgore*, 93 F.3d at 754. In *Kilgore*, the appellate court upheld the summary

---

("Solely for purposes of their motion for summary judgment, these Defendants will assume that a genuine issue of material fact exists as to whether Plaintiff can prove her claims under a 'hostile work environment' theory"), but found it worthwhile nevertheless to set out the evidence as it lays the factual foundation for all claims brought in this action.

[10]Defendant admits, for purposes of these Motions, that it is a joint employer under Title VII (Doc. 55, p. 2).

judgment determination, made by the district court, for the employer because the plaintiffs failed to return to work after making their complaint of sexual harassment; the court found that there was insufficient time for the employers to have corrected the situation.

In this action, the evidence shows that Kurtts did not return to work after she made her first complaint of the harassment; her testimony was that she subjectively believed that her job was no longer available to her as she was asked if she wanted her final check and no other option seemed available. In other words, Plaintiff believed that she was constructively discharged from her job. However, the standard expressed in *Kilgore* and *Steele* is whether a reasonable person would have been compelled to resign. Accepting Plaintiff's assertions as true, the Court finds that a reasonable person would have resigned under the factual circumstances as they have been presented herein. In other words, the Court finds that Plaintiff has satisfied the fourth prong of a *prima facie* case of a hostile environment sexual harassment claim, *viz.*, "that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment."

However, the Court is mindful of the remainder of the *Kilgore* holding that the employee give the employer sufficient time to remedy the situation. This moves the Court to an examination of the fifth prong, *i.e.*, the liability issue, of the hostile environment analysis. In *Speigner v. Shoal Creek Drummond Mine*, 2010 WL 4342242, *1 (11th Cir. Nov. 3, 2010), the Eleventh Circuit Court of Appeals held the following:

> When an employer undertakes a tangible adverse employment action against an employee complaining of a hostile work environment created by an immediate supervisor, the employer is subject to vicarious liability. "When no tangible employment action is taken, [however], a defending employer may raise an affirmative defense to liability." To establish this defense, the employer must prove by a preponderance of the evidence: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."

*Speigner*, 2010 WL 4342242, at *1 (*quoting Faragher v. City of Boca Raton*, 524 U.S. 775, 807-08 (1998). The relevant evidence of record follows.

Defendants have provided the Court with a copy of the Clinic Policy Manual which has a policy statement of non-

13

discrimination and a sexual harassment policy with guidelines which state that sexual harassment is not condoned; furthermore, "[a]ll employees, including supervisors and managers, will be subject to disciplinary actions, up to and including termination for any act of sexual harassment they commit" (Doc. 45, Exhibit F, p. 9; *see generally* pp. 8-9). The guidelines also state the following: "Any employee who feels victimized by sexual harassment is encouraged to report the harassment to their supervisor or the Controller immediately. If the employee's immediate supervisor is the source of the alleged harassment, the employee should report the problem to the Controller" (Doc. 45, Exhibit F, pp. 9; *see generally* pp. 8-9).

Kurtts testified, by deposition, that she never received a copy of the Clinic Policy Manual (hereinafter *Manual*) and was never told that a copy was available to her (Doc. 45, Kurtts Depo., pp. 65-66). Plaintiff admits, though, that she signed a statement saying that she received a copy of the Manual; this was witnessed by co-worker Tamisha Perry (*id.* at pp. 29, 65). Kurtts further stated that she never asked to see the Manual to see what she was supposed to do if she felt like she was being harassed (*id.* at p. 65).

After considering all of the evidence, the Court finds that CSG established a procedure by which Kurtts could make her complaints of sexual harassment known; in fact, Kurtts availed herself of that procedure to complain of Dr. Morgan's behavior. However, she did not give Defendant any time to implement the procedure to remedy the harassment to which she was being subjected. While the Court cannot say whether or not CSG's sexual harassment policy would have ultimately proved efficient, there is no doubt that Defendant was not given the opportunity to effectuate it. Therefore, the Court finds that Plaintiff has not proven all five requirements of a *prima facie* case of a hostile environment sexual harassment claim under *Mendoza*.[11] Therefore, CSG's Motion for summary judgment (Docs. 45-46, 52) is **GRANTED** and Plaintiff's Motion is **DENIED** as to this claim (Docs. 41-43).

Kurtts has also raised a claim of retaliation. Specifically, Plaintiff states that Defendant "retaliated against the plaintiff for protesting and complaining about

---

[11]The Court acknowledges that its discussion of the fourth requirement—that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment—is somewhat murky in that *Kilgore* would have found no constructive discharge and stopped the analysis there. So, while the Court, in this action, has found that it was reasonable for Kurtts to have felt as though she was being

15

sexual harassment and retaliation in the terms, conditions and benefits of her employment, culminating in her constructive discharge" (Complaint, ¶ 45). "To establish a prima facie case of retaliation under 42 U.S.C. § 2000e-3(a), a plaintiff must show 'that (1) [she] engaged in . . . statutorily protected expression; (2) [she] suffered an adverse employment action; and (3) there is a causal [connection] between the two events.'" *Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1155 (11th Cir. 2002) (*quoting Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 507 (11th Cir. 2000)).

The facts already set out herein demonstrate that Plaintiff made her first and only complaint of harassment and resigned from her job in two phone calls occurring on the same day. There was no time for retaliation to take place; furthermore, there's been no showing of an intervening retaliatory action. Kurtts's assertions otherwise are without merit. Therefore, CSG's Motion for summary judgment (Docs. 45-46, 52) is **GRANTED** and Plaintiff's Motion is **DENIED** as to this claim (Docs. 41-43).

Kurtts has also claimed that CSG "negligently and/or wantonly failed to adequately hire, supervise and train and negligently and/or wantonly retained Johnnie Morgan, which

---

shown the door, one cannot ignore the fact that Plaintiff did not

proximately caused the assault and battery of the plaintiff," in addition to other specified torts (Complaint, ¶ 51). The parties both acknowledge that this claim arises under State law (Complaint, ¶ 50; Doc. 46, p. 24).

The Court first notes that "'[i]n order to establish a claim against an employer for negligent supervision, training, and/or retention, the plaintiff must establish that the allegedly incompetent employee committed a common-law Alabama tort." *Beasley v. Wal-Mart Stores East, L.P.*, 2006 WL 3449144 at *13 (S.D. Ala. November 26, 2006) (*quoting Thrasher v. Ivan Leonard Chevrolet*, 195 F.Supp.2d 1314, 1319 (N.D. Ala. 2002). Therefore, to reach a decision on this claim, the Court must examine the other state claims.

Plaintiff has brought claims for assault and battery (Complaint, ¶¶ 53-57), invasion of privacy (Complaint, ¶¶ 58-61), and outrage (Complaint, ¶¶ 62-65). In *Potts v. BE&K Construction Co.*, 604 So.2d 398, 400 (Ala. 1992), the Alabama Supreme Court held the following:

> "For an employer to become liable for the intentional torts of its agent, the plaintiff must offer evidence that (1) the agent's wrongful acts were in the line and scope of his employment; or (2) that the

---

allow CSG any time to investigate—much less correct—the problem.

> acts were in furtherance of the business of
> the employer; or (3) that the employer
> participated in, authorized, or ratified the
> wrongful acts."
>
> * * *
>
> [For an employee] to prove that an employer
> has implicitly "ratified" or "tolerated" one
> employee's sexual harassment of another
> employee, [] in addition to proving the
> underlying tortious conduct of an offending
> employee, a complaining employee must show
> that the employer (1) had actual knowledge
> of the tortious conduct of the offending
> employee and that the tortious conduct was
> directed at and visited upon the complaining
> employee; (2) that based upon this
> knowledge, the employer knew, or should have
> known, that such conduct constituted sexual
> harassment and/or a continuing tort; and (3)
> that the employer failed to take "adequate"
> steps to remedy the situation.

*Potts*, 604 So.2d at 400 (*quoting Joyner v. AAA Cooper Transportation*, 477 So.2d 364, 365 (Ala. 1985)).

In applying *Potts* to the present action, the Court finds that Plaintiff has not shown that (1) Morgan's behavior was in the line and scope of his employment; or (2) that his acts were in furtherance of CSG's business; or (3) that CSG participated in, authorized, or ratified his behavior. The evidence shows that Defendant did not even know of Morgan's harassment until Kurtts called them, reported it, and resigned. Having reached this determination, the Court finds that Plaintiff cannot meet

her burden of proof, under *Potts*, on the claims for assault and battery, invasion of privacy, and outrage.  The Court would further note that this failure means that Kurtts is unable to establish a claim against CSG for negligent supervision, training, and/or retention under *Beasley*.  Therefore, the Court finds that Defendant's Motion (Docs. 45-46, 52) is **GRANTED** as to all state claims against CSG; Plaintiff's Motion is **DENIED** as to these same claims (Docs. 41-43).

In summary, Defendant CSG seeks summary judgment on all claims brought by Plaintiff in this action.  The Court finds that Kurtts has failed to provide sufficient evidence to establish all necessary elements for any of the claims which she has raised in this action.  Therefore, Plaintiff's Motion for Summary Judgment is **DENIED** in its entirety (Docs. 41-43) and Defendant CSG's Motion for Summary Judgment is **GRANTED** (Docs. 45-46, 52) in its entirety.  Judgment will be entered by separate Order.

DONE this 2nd day of March, 2011.

<pre>                              s/BERT W. MILLING, JR.
                              UNITED STATES MAGISTRATE JUDGE</pre>